UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN JONES,<br><br>             Plaintiff,<br><br>      v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>             Defendant. | No.  2:12-cv-01714-KJN<br><br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act ("Act").[1]  In his motion for summary judgment, plaintiff principally contends that the Commissioner erred by finding that plaintiff was not disabled from May 21, 2004, plaintiff's alleged disability onset date, through the date of the final administrative decision.  (Mot. for Summ. J., ECF No. 20.)  The Commissioner filed an opposition to plaintiff's motion and a cross-motion for summary judgment.  (Opp'n, ECF No. 21.)  Plaintiff filed reply briefing in support of his moving papers.  (Reply, ECF No. 22.)

---

[1] This action was initially referred to the undersigned pursuant to E.D. Cal. L.R. 302(c)(15), and both parties voluntarily consented to proceed before a United States Magistrate Judge for all purposes.  (ECF Nos. 11, 18.)

1

For the reasons that follow, the court denies plaintiff's motion for summary judgment, grants the Commissioner's cross-motion for summary judgment, and enters judgment for the Commissioner.

I.   BACKGROUND

Plaintiff was born on February 7, 1964, has a twelfth grade education, and worked a number of temporary jobs between 2005 and 2007.[2]  (Administrative Transcript ("AT") 14, 56.)  On January 13, 2006, plaintiff applied for DIB alleging an onset date of May 20, 2004.  (AT 215.)  Subsequently, on September 8, 2007, plaintiff applied for SSI, alleging an onset date of May 21, 2004.  (AT 219.)  Plaintiff complained of acute and constant back pain, lumbar strain, and dizziness resulting from a work injury of October 20, 2002.  (AT 66-67, 242.)  Plaintiff claims his injury prevents him from working long hours and, at times, prevents him from walking.  (AT 242.)

On May 18, 2006, the Commissioner denied plaintiff's application for benefits, finding that plaintiff was not disabled.  (AT 171.)  Plaintiff's request for reconsideration was denied on December 19, 2007.  (AT 177.)  Thereafter, plaintiff requested a hearing before an administrative law judge ("ALJ"), which took place on March 12, 2009.  Plaintiff, who was represented by counsel, testified at the hearing.  (AT 51.)  A vocational expert ("VE") also testified.  (Id.)  After the ALJ rendered a determination adverse to plaintiff, the Appeals Council remanded the matter to the ALJ on September 18, 2009, directing her to consider certain issues and evidence.  (AT 12.)  A second hearing occurred on January 21, 2010, and plaintiff, his counsel, and a VE were present at that hearing.  (Id.)

In a decision dated February 25, 2010, the ALJ determined that plaintiff was not under a disability and ineligible for benefits.  (AT 21.)  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on April 27, 2012. (AT 1.)  On June 27, 2012, plaintiff filed this action to obtain judicial review of the

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order.  The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

Commissioner's final decision. (ECF No. 2.)

Plaintiff argues that "the ALJ rejected the opinion of plaintiff's treating physician that plaintiff would be absent from work about three days per month without a legitimate basis for so doing." (Mot. for Summ. J. at 21.)

II.     LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

III.    DISCUSSION

   A.    Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to SSI and DIB pursuant to the Commissioner's standard five-step analytical framework.[3] As an initial matter, the ALJ found that plaintiff

---

[3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment . . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step

3

remained insured for purposes of DIB through September 30, 2007. (AT 14.) At the first step, the ALJ concluded that plaintiff had not engaged in substantial gainful activity since May 21, 2004, the alleged onset date of plaintiff's impairments. (Id.) At step two, the ALJ determined that plaintiff had the following severe impairments: lumbar spondylolisthesis and disc protrusion. (AT 15.) However, at step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id.)

Before proceeding to step four, the ALJ assessed plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work in that the claimant can lift and carry 20 pounds occasionally and 10 pounds frequently, stand and walk six hours of an eight hour day with normal breaks, sit six hours of an eight hour day with normal breaks, as defined in 20 CFR 404.1567(b) and 416.967(b) except he must refrain from reaching, pulling, pushing, stooping, twisting activities for longer than 45 minutes at a time (vs. over the course of an entire day); can only walk two city blocks at one time without rests; can only sit 30 minutes at one time; can twist, stoop and climb stairs occasionally; can crouch, squat and climb ladders rarely; has no significant limitations in repetitive movements such as handling and fingering; and can only perform simple repetitive tasks i.e. unskilled work since he could have

---

three. If not, then a finding of not disabled is appropriate.

Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.

Step four: Is the claimant capable of performing his past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

4

interference with attention and concentration on a regular basis. (Id.)

At step four, the ALJ found that plaintiff had no past relevant work.  (AT 19.)  Finally, at step five, the ALJ determined that, considering plaintiff's age, education, work experience, and RFC, there were jobs in significant numbers in the national economy that plaintiff could perform.  (AT 20.)  Specifically, the ALJ relied upon VE testimony indicating that plaintiff would be able to perform the "light" exertional jobs such as "unskilled cashier," "office helper," and "courier," with various limitations.  (AT 21, 139-41.)  Accordingly, the ALJ concluded that plaintiff had not been under a disability, as defined in the Act, from May 21, 2004, through the date of the ALJ's decision.  (AT 21.)

> B. Whether The ALJ Improperly Rejected Plaintiff's Treating Physician's Opinion As To How Often Plaintiff Would Be Absent From Work

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  Holohan v. Massanari, 246 F.3d 1195, 1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual.  Holohan, 246 F.3d at 1202; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  The regulations require the ALJ to give weight to the contradicted treating physician opinion, Edlund, 253 F.3d at 1157,[4] except that the ALJ need not give the opinion weight if it is conclusory and supported by minimal clinical findings.  Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751.  The opinion of a non-examining professional, without other

---

[4] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization.  20 C.F.R. § 404.1527.

evidence, is insufficient to reject the opinion of a treating or examining professional.  Lester, 81 F.3d at 831.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons.  Lester, 81 F.3d at 830-31.  In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons.  Lester, 81 F.3d at 830.

The question in this case is whether the ALJ properly analyzed and weighed the medical opinion evidence concerning how often plaintiff would be absent from work due to his impairment which, in turn, determines whether he is capable of maintaining employment.  (AT 148.)

      a.   Dr. Shin's Opinions Regarding Plaintiff's Functional Limitations

On November 8, 2007, Dr. Shin opined that plaintiff has the following functional limitations: "refrain from reaching[,] pulling[,] pushing[,] stooping[,] twisting[,] for more than 45 minutes [because this] aggr[evates] pain."  (AT 439.)  Dr. Shin also noted that plaintiff "require[s] conservative management treatment of flare-ups of his low back pain, pain meds anti-inflammatory medication.  Occasional addictive pain medication L5-S1 facet joint injections may be beneficial based on the MRI report."  (Id.)

On February 19, 2009, Dr. Shin filled out a Lumbar Spine Residual Functional Capacity Questionnaire.  (AT 482-84.)  In this report, Dr. Shin noted that plaintiff had a "fair" prognosis. (AT 482.)  Curiously, and without explanation, Dr. Shin indicated that plaintiff's impairments were *not* reasonably consistent with the "symptoms and functional limitations described" in the questionnaire.  (AT 483.)  In any event, Dr. Shin noted that plaintiff's symptoms were severe enough to "frequently" interfere with the attention needed for simple work tasks.  (Id.)  He also noted that one of plaintiff's medications "potentially" had a side effect of drowsiness.  (Id.)  In summarizing plaintiff's limitations, Dr. Shin opined that plaintiff could walk for two city blocks without rest; could sit for thirty minutes at one time; could occasionally twist, stoop, and climb

stairs but only rarely crouch or climb ladders; had no significant limitations in doing repetitive reaching, handling, or fingering; and estimated that plaintiff would be absent from work "about three days per month." (AT 483-484.)

      b. Plaintiff's Argument

Plaintiff argues that the ALJ erred in discounting one aspect of Dr. Shin's opinion: that plaintiff would likely miss "three days" of work per month. (Mot. for Summ. J. at 20-24.)

As detailed below, however, the ALJ gave several particularized reasons for discounting this portion of Dr. Shin's opinion: (1) because Dr. Shin himself released plaintiff to "light industrial work;" (2) because plaintiff testified that he had missed work only a "couple of times" in a 2-4 month period; (3) because the record shows that plaintiff's "symptoms are fairly well controlled with the conservative treatment plan he follows;" and (4) because plaintiff has "worked regularly, albeit in temporary work positions causing him to be laid off frequently." (AT 19.) Plaintiff's briefing challenges the ALJ's second, third, and fourth proffered reasons, arguing that plaintiff actually missed more work[5] than the ALJ believed, that plaintiff's treatment should not be called "conservative" given that Dr. Shin is a specialist who recommended surgical consultation for disc replacement, and that plaintiff actually had not worked "regularly" because he has not been able to find permanent employment. (Id. at 22-23, 26.)

      c. The ALJ's Decision Is Supported By Substantial Evidence

The ALJ gave explicit, record-supported reasons for giving little weight to the portion of Dr. Shin's opinion that suggests plaintiff would be absent from work "three days per month" due to his symptoms, concluding that the evidence of record conflicted with and undermined the "absenteeism" portion of Dr. Shin's opinion. (AT 19, 484.) The ALJ stated:

> Great weight is given to [Dr. Shin's] opinion with regard to [various] assessed limitations with the exception of the finding that [plaintiff] would be absent about three days per month. His opinion is weighted heavily due to the fact that he is the claimant's treating physician since 2004, and has released the claimant to light work which would conform to the limitations.
>
> [. . .]

---

[5] Plaintiff notes that he testified regarding missing three days of work per month at a prior job. (AT 84.)

> Dr. Shin's opinion . . . is given little weight for he released [plaintiff] to light industrial work, and [plaintiff's] own testimony, when addressing his work from 2005 through 2007 upon questioning by the undersigned, and his representative, was that in 2-4 months of work, he was only absent a couple of times. Considering the record evidencing [that plaintiff's] symptoms are fairly well controlled with the conservative treatment plan he follows, [and] that he has in fact worked regularly, albeit in temporary work positions causing him to be laid off frequently, this facet of the doctor's opinion is given little weight.

(AT 18-19 (citations to record omitted).)  Further, the ALJ reasoned that "[plaintiff] worked from 2005 through 2009, and that treating physician Dr. Carl Shin had released him to do light industrial work.  Records of Dr. Shin confirm in progress notes at various times that the claimant is either working, looking for work, or just laid off from work."  (AT 16 (internal citations omitted).)  The ALJ noted that Dr. Shin treated plaintiff "conservatively and as needed with physical therapy, medications — anti-inflammatory to narcotic when his pain intensifies or flares up, usage of a TENS unit, occasional epidural steroid injections, and massage therapy, all of which provide some level of relief."  (AT 17.)

Each of the ALJ's reasons for discounting the ALJ's opinion as to plaintiff's absenteeism is discussed below in turn.  In short, however, while plaintiff identifies some evidence potentially bolstering Dr. Shin's opinion regarding absenteeism, the existence of *some* bolstering evidence does not render the ALJ's determination erroneous.  As described below, the ALJ gave several record-supported reasons for discounting the narrow "absenteeism" portion of Dr. Shin's opinion.

1. *"About Three Days Per Month"*

Before analyzing the ALJ's reasons for rejecting Dr. Shin's opinion regarding plaintiff's potential absenteeism, it is worth clarifying exactly what Dr. Shin opined in this regard.  Dr. Shin opined that, in his "estimate," plaintiff's symptoms could cause plaintiff to miss "*about* three days" of work per month.  (AT 483-84 (emphasis added).)  The ALJ assessed this estimate in the context of plaintiff's overall treatment by Dr. Shin and the other evidence of record.  While plaintiff argues that the medical opinion evidence suggests plaintiff's likely absenteeism rate of "three days" per month, Dr. Shin never opined that plaintiff's symptoms would definitely cause him to miss work with this frequency.  Given that Dr. Shin "estimated" absenteeism of "about"

8

three days per month, the ALJ did not err in looking to the medical evidence of record to determine the amount of weight to give to this portion of the opinion.

### 2. *Plaintiff Had Been Released To Perform Light Industrial Work*

The ALJ discounted the "absenteeism" portion of Dr. Shin's opinion in part because plaintiff testified that he had been released to perform "light" work and that he in fact performed such work, apparently notwithstanding his symptoms and their potential to cause absenteeism. (AT 57-61, 66-67, 82-84.)

While a physical ability to perform "light" work does not necessarily equate to an ability to work without absenteeism issues, the ALJ apparently reasoned that plaintiff's possessing the physical ability to perform "light" work weighs against his having symptoms so severe that they would cause him to miss work about three days per month. The undersigned cannot conclude that the ALJ erred in this reasoning, and must defer to the ALJ because "[t]he ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund, 253 F.3d at 1156; Tommasetti, 533 F.3d at 1038. Moreover, as discussed below, the ALJ offered other record-supported reasons for discounting the "absenteeism" component of Dr. Shin's opinion.

### 3. *Plaintiff's Testimony About Absenteeism*

The ALJ discounted the "absenteeism" portion of Dr. Shin's opinion also, in part, because plaintiff testified that he had missed work only a "couple of times" in a two to four month period. (AT 19.) Plaintiff testified that in one of his positions, he worked in two week stints over two to four months, and that he was absent twice during those "couple of months." (AT 124, 130.) Plaintiff's briefing attempts to clarify plaintiff's testimony on this issue by noting that plaintiff may have worked two weeks, been laid off for two weeks, and then rehired for two weeks during this particular period. (Mot. for Summ. J. at 22.) Plaintiff's briefing also notes that plaintiff had testified to having missed "three days a month" due to pain while working at ABM. (AT 83-84.)

However, even accepting plaintiff's argument that absenteeism negatively impacted his work for ABM, evidence that plaintiff missed three days of work in a handful of different time periods does not necessarily conflict with the ALJ's determination, nor does it prove that

9

plaintiff's absenteeism would regularly be at such a rate, nor does it render the ALJ's conclusion unsupported by substantial evidence. Dr. Shin's treatment notes indicate that, as of at least January 30, 2007, plaintiff was working part time on an assembly line. (AT 432.) As evidenced in Dr. Shin's progress report of February 27, 2007, the assembly line work continued through at least that date. (AT 433.) Plaintiff's complaints concerning this "light industrial" job came on June 27, 2007, at least six months *after* beginning that work, when the nature of the job changed and became more arduous. (AT 434.) According to the evidence of record, Dr. Shin's treatment notes from January 30, 2007, to June 27, 2007, do not indicate concerns about plaintiff's symptoms causing significant absenteeism problems or concerns about plaintiff's physical ability to perform such work. (AT 432-34.) The record as a whole also indicates that plaintiff worked in numerous *other* jobs despite his symptoms (AT 130-32) and yet plaintiff has not identified evidence that absenteeism was a significant problem in *those* jobs. Moreover, even if the ALJ erred in interpreting plaintiff's testimony about his absences during periods of working for ABM, such error was harmless, because the ALJ gave other record-supported reasons for giving little weight to the "absenteeism" portion of Dr. Shin's opinion. See Curry v. Sullivan, 925 F.2d 1127, 1129 (9th Cir. 1990) (harmless error analysis applicable in judicial review of social security cases).

4. *Well-Controlled Symptoms With Conservative Treatment*

The ALJ discounted the "absenteeism" portion of Dr. Shin's opinion also, in part, because the ALJ determined that Dr. Shin's conservative treatment of plaintiff and plaintiff's well-controlled symptoms indicated that plaintiff was unlikely to have significant absenteeism issues. (AT 19.) In discussing Dr. Shin's conservative treatment of plaintiff, the ALJ stated:

> [Plaintiff] has been treated over the years, conservatively and as needed with physical therapy, medications — anti-inflammatory to narcotic when his pain intensifies or flares up, usage of a TENS unit, occasional epidural steroid injections, and massage therapy, all of which provide some level of relief. In 2006, [plaintiff] was declared permanent and stationary by worker's compensation doctors, and released to work, being given a 25 pound weight lifting restriction. [Plaintiff] continues care currently once every three months with [Dr. Shin], takes medications for pain and does home exercises. The record does not evidence that he has been referred to any specialists. Objective findings in 2009 are consistently some

10

> pain with lumbar range of motion, doing fairly well without the use of opiates; leg symptoms not as bad since physical therapy and only experiences of occasional radiating symptoms to left leg; during a flare-up affecting the leg, Dr. Shin had [plaintiff] perform five heel raises and saw no significant weakness, that he demonstrated normal gait and stance []. There is a single record in 2008 which includes findings of persistent spasm in the low back, but that medications have been helpful without significant side effects []. In 2006-2007, when [plaintiff] was seeing the doctor every two months, and frequently working, the objective findings were substantially the same with occasional flare-ups causing medication changes to meet the need [].  [ . . . ] Medications were very helpful as were the home exercises he learned in physical therapy.

(AT 17.) The record supports each of the above statements by the ALJ, and each are addressed below in turn. The record supports the ALJ's determination that:

> [Plaintiff] has been treated over the years, conservatively and as needed with physical therapy, medications — anti-inflammatory to narcotic when his pain intensifies or flares up, usage of a TENS unit, occasional epidural steroid injections, and massage therapy, all of which provide some level of relief.

(Id.) Dr. Shin himself stated that plaintiff "require[s] *conservative* management treatment of flare-ups of [plaintiff's] low back pain." (AT 439 (emphasis added).) Likewise, plaintiff's prior physician, Dr. Merrill, characterized plaintiff's treatment as "conservative," and such treatment included anti-inflammatory medications, muscle relaxants, narcotic analgesics, and a trial epidural injection. (AT 334.) Dr. Merrill prescribed physical therapy in 2003 and Dr. Shin prescribed more physical therapy in 2006, which plaintiff found "quite helpful." (AT 338, 423, 427.) Under Dr. Shin's care, plaintiff was prescribed various combinations of medication. (AT 369-73, 421-37, 472, 474, 499, 501.) Additionally, Dr. Shin's records contain numerous notations indicating that the medications were helpful in managing pain. (AT 421, 423-24, 428, 433, 436-37, 474, 505.) Likewise, plaintiff's use of a TENS unit, occasional steroid injections, and massage therapy alleviated plaintiff's pain to varying degrees. (AT 505 (plaintiff noticed "significant improvement" from massage therapy), 494 (plaintiff reported receiving "about five days of pain relief" after a massage), 487 (according to massage therapist, plaintiff stated that "he thinks he could prevent his pain and spasms by receiving massage more regularly"), 374 (pain only affecting plaintiff 2-3 times per month when using TENS unit), 328 (plaintiff was "doing better" after two epidurals).) At numerous points, Dr. Shin's records indicate that the medications

11

were beneficial.  (AT 428, 436-37, 474.)  Likewise, plaintiff's at-home exercising was helpful.  (AT 424.)  The record supports the ALJ's determination that conservative treatment in the form of medication, physical therapy, and massage have helped plaintiff find relief from his symptoms.  Accordingly, the ALJ was entitled to construe such evidence as undercutting the "absenteeism" portion of Dr. Shin's opinion.

Similarly, the record supports the ALJ's determination that:

> In 2006, [plaintiff] was declared permanent and stationary by worker's compensation doctors, and released to work, being given a 25 pound weight lifting restriction.

(AT 17.)  Dr. Shin's notes from 2006 indicate that a "Permanent and Stationary Report has been filed in the past."  (AT 369.)  Plaintiff's briefing does not dispute the Worker's Compensation determination.  Therefore, the record supports the ALJ's determination that plaintiff's symptoms — which have not been severe enough to prevent him from being released to work — are also not severe enough to cause him significant absenteeism issues.

The record also supports the ALJ's determination that:

> [Plaintiff] continues care currently once every three months with [Dr. Shin], takes medications for pain and does home exercises.

(AT 17.)  In the months prior to the ALJ's determination of February 25, 2010, plaintiff was seeing Dr. Shin about once every three months.  (AT 21, 499 (appointment on November 19th, 2009), 501 (appointment on August 27, 2009), 503 (appointment on June 4, 2009), 505 (appointment on March 17, 2009).)  During these appointments, the medication prescribed by Dr. Shin varied slightly from Relafen, Robaxin, and Prilosec on March 17 and June 4 (AT 503, 505), to Relafen, Zanaflex, and Prilosec on August 27 (AT 501), to Relafen, Prilosec, and Ambien as of November 19 (AT 499).  Likewise, Dr. Shin noted that plaintiff was "exercising more" and encouraged him to "exercise at home," a direction that plaintiff reportedly followed.  (AT 501, 503, 505.)  Therefore, the record supports the ALJ's findings as to the regularity and substance of plaintiff's more recent care with Dr. Shin.  The ALJ was entitled to interpret this as evidence of conservative treatment indicating that plaintiff's symptoms continued to be well-controlled and to thereupon determine that plaintiff's symptoms were unlikely to cause significant absenteeism

issues.

The ALJ determined that plaintiff's treatment could be considered conservative because "[t]he record does not evidence that he has been referred to any specialists." (AT 17.) While plaintiff argues that Dr. Shin is himself a specialist to whom plaintiff was referred, plaintiff cites no portion of the record indicating that Dr. Shin is a "specialist." (ECF No. 20 at 26.) To the contrary, plaintiff himself refers to Dr. Shin as "plaintiff's long time treating physician." (Id. at 24.) Similarly, while Dr. Shin suggested plaintiff see Dr. Montesanto for a "surgical consultation," on July 21, 2004 (AT 372), as of January 3, 2006 (nearly one and a half years later), plaintiff had not been treated by Dr. Montesanto.[6] (AT 369.) Therefore, the evidence supports the ALJ's finding that plaintiff had not received "specialist" medical treatment, which supports the ALJ's determination that plaintiff's symptoms are neither severe enough to require more aggressive treatment nor severe enough to cause significant absenteeism problems.

The record also supports the ALJ's determination that:

> Objective findings in 2009 are consistently some pain with lumbar range of motion, doing fairly well without the use of opiates; leg symptoms not as bad since physical therapy and only experiences of occasional radiating symptoms to left leg; during a flare-up affecting the leg, Dr. Shin had [plaintiff] perform five heel raises and saw no significant weakness, that he demonstrated normal gait and stance [].

(AT 17.) Dr. Shin's treatment records from 2009 indicate that plaintiff had some lumbar pain and was doing "fairly well without the use of opiates." (AT 499, 505.) Plaintiff noted that "his leg symptoms were not as bad since the physical therapy" and his left leg pain was only "occasional." (AT 501.) As the ALJ said, Dr. Shin "did not see significant weakness" after requiring plaintiff to perform five heel raises and noted that plaintiff had "normal gait and stance." (AT 503.) Dr. Shin also noted "good progress" after plaintiff underwent massage therapy and more exercise, so much so that he lessened the frequency of plaintiff's appointments. (AT 505.) Therefore, the ALJ accurately noted that plaintiff's symptoms were tolerable with medication and physical

---

[6] The court declines to entertain plaintiff's counsel's assertion that, because "this was a worker's compensation case, it seems reasonable to assume that the referral was not approved by the insurance company." (ECF No. 22 at 2.) Even if this were relevant to the ALJ's findings, plaintiff's counsel cites no evidence supporting this theory.

13

therapy, supporting the ALJ's determination that such symptoms were unlikely to cause significant absenteeism issues.

The record also supports the ALJ's finding that:

> There is a single record in 2008 which includes findings of persistent spasm in the low back, but that medications have been helpful without significant side effects [].

(AT 17.) On November 26, 2008, plaintiff returned to Dr. Shin with "persistent spasms [and] pain in his low back." (AT 474.) Dr. Shin noted that plaintiff's "[m]edications have been helpful without significant side effects. (Id.) The ALJ was thus entitled to consider plaintiff's relatively positive response to medications as indicating that plaintiff's symptoms could continue to be treated with medications, such that those symptoms were unlikely to cause significant absenteeism. See Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling" for purposes of determining eligibility for benefits under the Act.)

The record also supports the ALJ's finding that:

> In 2006-2007, when [plaintiff] was seeing the doctor every two months, and frequently working, the objective findings were substantially the same with occasional flare-ups causing medication changes to meet the need [].

(AT 17.) As noted above, Dr. Shin's records indicate that plaintiff experienced occasional pain flare-ups and that Dr. Shin adjusted plaintiff's medication in response. (See AT 369, 421-37). Again, the record confirms that plaintiff's longtime treating physician managed plaintiff's symptoms with medications, not more aggressive treatment. The ALJ was entitled to determine that the plaintiff's ability to work while taking his medications as evidence indicating that plaintiff's symptoms are unlikely to cause significant absenteeism.

The evidence of record supports the ALJ's finding that plaintiff's symptoms were well-controlled through medication, massage therapy, exercise, and other forms of conservative treatment. Dr. Shin opined that plaintiff's symptoms might be pervasive enough to cause significant absenteeism problems, yet these symptoms were demonstrably not pervasive enough to warrant *more than* the sorts of "conservative" treatments Dr. Shin himself prescribed, and Dr.

14

Shin's own notes do not reflect absenteeism concerns.  The ALJ was entitled to resolve the conflict between the "absenteeism" portion of Dr. Shin's opinion and Dr. Shin' conservative treatment of plaintiff.

     5.  *Plaintiff's History Of "Regular" Work*

The ALJ discounted the "absenteeism" portion of Dr. Shin's opinion also in part because plaintiff worked "regularly," albeit in temporary positions, despite his symptoms.  (AT 19.)  As the ALJ accurately noted, Dr. Shin's own treatment notes confirm that plaintiff was either working, looking for work, or recently laid off from work.  (AT 16 (citing to Dr. Shin's notes dated 1/30/07, 6/22/07, 8/22/07, 10/10/07, 1/13/09, and 8/27/09).)  In June of 2006, Dr. Shin wrote that plaintiff "needs to begin some type of work."  (AT 429.)  In August of 2006, Dr. Shin wrote that plaintiff was "looking for work compatible with his limitations."  (AT 430.)  In January of 2007, Dr. Shin wrote that plaintiff was working (AT 432), and in August of 2007, Dr. Shin wrote that he was glad that plaintiff had found a job and was able to work part time (AT 436).  In October of 2007, Dr. Shin wrote that plaintiff was working part time and seeking a full time position.  (AT 437.)  In August of 2009, Dr. Shin wrote that plaintiff was working part time.  (AT 501.)  The record also reflects plaintiff's history of working in temporary positions after the date he alleges disability.  (AT 251 (mid-2005 to at least early 2006), 283-90 (late 2004 to mid-2007), 432-34 (early 2007 culminating in a full-time job in late 2007); see also AT 472 (indicating a desire to continue working as of early 2009)[7].)

The ALJ considered this history of regular work as weighing against plaintiff's allegations of disability.  (AT 19.)  The ALJ is permitted to rely on such evidence.  See Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009) (finding the plaintiff's search for employment, among other activities, was evidence belying the plaintiff's claims of disability).  Taking Dr. Shin's treatment notes together with his opinion and examining the record as whole,

---

[7] While plaintiff should not be penalized for attempting to maintain employment despite his symptoms, the undersigned must analyze the ALJ's decision within the applicable legal standards, which require deference to the ALJ where the same evidence can rationally be interpreted in different ways, and where her decision is supported by substantial evidence.  See Tommasetti, 533 F.3d at 1038.

15

the ALJ apparently reasoned that plaintiff's on-and-off employment indicated that plaintiff could work without significant absenteeism issues despite his symptoms.

Plaintiff argues that the on-and-off employment actually confirms that plaintiff could not hold down a job for long, bolstering Dr. Shin's suggestion of a potential absenteeism problem. Yet plaintiff has not identified evidence of record stating that plaintiff's failures to maintain employment were *due to absenteeism caused by his symptoms* rather than due to any number of other reasons.

The ALJ's finding that plaintiff had a history of regular, albeit temporary, work is supported by the record. While the ALJ could have rationally interpreted this evidence as indicating that plaintiff's symptoms caused his inability to hold down permanent employment, it was also rational for the ALJ to interpret this evidence as indicating plaintiff's ability to work *despite* his symptoms. Where evidence can be rationally interpreted in two different ways, the ALJ's interpretation controls. See Tommasetti, 533 F.3d at 1038 ("The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation.") Here, the ALJ rationally interpreted the evidence of record as indicating that plaintiff's various jobs, albeit temporary, suggest that plaintiff can work despite his symptoms and without those symptoms causing significant absenteeism.

In sum, the ALJ properly determined that the "absenteeism" portion of Dr. Shin's opinion was neither borne out by his own treatment notes nor by the record as a whole. See Meanel, 172 F.3d at 1114 (treating physician opined that patient has "some diminution" in concentration skills, but that portion of the opinion was "conclusory and unsubstantiated by relevant medical documentation" and treating physician's notes "contain[ed] little objective evidence of an impairment that would lead to decreased concentration skills," plus other evidence of record indicated that patient did not have significantly limited concentration abilities, so the ALJ was not obligated to accept the unsubstantiated portion of the treating physician's opinion.) Here, the ALJ gave several valid, record-supported reasons for discounting the "absenteeism" portion of Dr. Shin's opinion, and plaintiff has not shown that the ALJ erred in so doing.

////

## IV. CONCLUSION

For the foregoing reasons, the court finds that the ALJ's decision was free from prejudicial error and supported by substantial evidence in the record as a whole. Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 20) is DENIED.

2. The Commissioner's cross-motion for summary judgment (ECF No. 21) is GRANTED.

3. Judgment is entered for the Commissioner.

4. The Clerk of Court is directed to close this case and vacate all dates.

IT IS SO ORDERED.

Dated: January 21, 2014

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE